UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELEKTRA PRINTZ GORSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE GYMBOREE CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No.: 14-CV-01314-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

Plaintiff Elektra Printz Gorski ("Gorski") alleges that Defendant The Gymboree Corporation ("Gymboree") infringed Gorski's registered copyright and registered trademark in Gymboree's marketing and sale of clothing featuring the phrase "lettuce turnip the beet." ECF No. 1 at 8-10. Before the Court is Gymboree's Motion to Dismiss. *See* ECF No. 12. The Motion has been fully briefed. *See* ECF Nos. 15-16. The Court finds the matter suitable for decision without oral argument under Civil Local Rule 7-1(b) and VACATES the hearing set for August 28, 2014 at 1:30 p.m. Having considered the briefing and relevant law, the Court DENIES in part and GRANTS in part Gymboree's Motion to Dismiss with leave to amend for the reasons stated below.

**I.  BACKGROUND**

Gorski and Gymboree both make shirts that feature the phrase "lettuce turnip the beet." *See* ECF No. 1; ECF No. 12. Gorski alleges that Gymboree sells "knock-offs [that] compete with Gorski's garments" in violation of federal copyright and trademark laws. Specifically, Gorski

1

United States District Court
For the Northern District of California

alleges that Gymboree has engaged in copyright infringement in violation of 17 U.S.C. § 101, infringement of a registered mark in violation of 15 U.S.C. § 1114, and unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a). ECF No. 1 at 8-9.




**Gorski's Design**  **Gymboree's Design**

Gorski owns United States Copyright Registration No. VA0001817452, titled *June 2011 through August 2011 Elektra Printz Gorski Designs*. ECF No. 1 at 4. The copyright, filed on August 29, 2011 and attached to the Complaint, contains pictures of seventy two-dimensional designs, eighteen of which are shirts and tank tops with the phrase "lettuce turnip the beet" on the front. ECF No. 1-1 at 5-6. The remaining pictures include a variety of images unrelated to the designs at issue in the instant litigation, such as illustrations featuring Michelle Obama's face. *Id.*

Gorski also owns U.S. Trademark Registration Nos. 4,297,108 and 4,454,801, which cover the mark LETTUCE TURNIP THE BEET for the following goods and services: "[p]aper for wrapping and packing"; "tote bags" and "[w]earable garments and clothing, namely, shirts"; and "[o]n-line retail store services featuring clothing, accessories and art." ECF No. 1 at 4. The two registrations, issued on March 5, 2013 and December 24, 2013, were attached to the Complaint. ECF No. 1-2, ECF No. 1-3.

Gorski alleges that she first created the designs in 2011 and that Gorski's shirts depicting the copyrighted design have been available to the public since June 2011 in the SoHo neighborhood of New York City and since August 2011 through Etsy (www.etsy.com) and Supermarket (www.supermarkethq.com). ECF No. 1 at 4. Gorski also alleges that "Gorski's light grey heather shirt for children is widely considered one of the most popular children's products

ever pinned on Pinterest under their 'Popular' heading and has over 120,000 product views on Etsy making it one of the most popular products ever on Etsy." *Id.* at 6. Gorski also alleges that "[s]ince 2011, Gorski has provided notice that the LETTUCE TURNIP THE BEET design, photos, and text in her online store are copyright protected by using the © or by providing written notification." *Id.* at 5.

Gorski alleges that in 2014 Gymboree began selling a "Lettuce Turnip the Beet Tee" in Gymboree's 300-plus Crazy 8 stores and online at www.crazy8.com. *Id.* at 8. Gorski alleges that the "knock-off" shirts feature a screen printed design that is "substantially similar" to her copyrighted designs. *Id.* at 5. Specifically, Gorski alleges that "the overall arrangement, shapes, typefaces, sizes and placement of the design elements" of Gorski's registered works are "substantially similar" to Gymboree's tees. *Id.* at 5-6. Gorski also alleges that use of Gorski's LETTUCE TURNIP THE BEET mark on Gymboree's "Lettuce Turnip the Beet Tee" is likely to cause confusion among customers as to the source, sponsorship, or affiliations of Gymboree's goods. *Id.* at 6.

Gorski filed the Complaint in the instant litigation on March 21, 2014. ECF No. 1. Gymboree filed the instant Motion to Dismiss on May 9, 2014. ECF No. 12. Gorski filed an Opposition on May 23, 2014. ECF No. 15. Gymboree filed a Reply on May 30, 2014. ECF No. 16.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

3

Case No.: 14-CV-01314-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). A court is also not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir .2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B.   Request for Judicial Notice

The Court generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the Complaint, but also documents whose contents are alleged in the complaint, provided the Complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Lee*, 250 F.3d at 688-89. The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (internal quotation marks omitted).

The Court also may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports, *see Anderson v. Holder*, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012); court documents already in the public record and documents filed in other courts, *see Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002); and publically accessible websites, *see Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005).

### C.     Leave to Amend

If the Court determines that the Complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . ,[and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

### III.    DISCUSSION

Gymboree moves to dismiss both the copyright and trademark causes of action.[1] The Court addresses each cause of action in turn.

---

[1] Gymboree requests judicial notice of the file history of U.S. Trademark Registration No. 4,297,108. *See* ECF No. 14. This request is unopposed. The Court GRANTS the request because documents of the Patent and Trademark Office are "public records subject to judicial notice on a motion to dismiss." *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

5

Case No.: 14-CV-01314-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**A.     Copyright**

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991). The second prong requires the plaintiff to allege that "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "The Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another." *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990). Under this test, the plaintiff must establish "both substantial similarity of general ideas" (an intrinsic test) and "substantial similarity of the protectable expression of those ideas" (an extrinsic test). *Id.* The extrinsic test considers the protectable elements in the copyrighted work. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *see also Cavalier*, 297 F.3d at 822. The intrinsic test is a subjective comparison of the two works through the eyes of an ordinary observer, focusing on the "total concept and feel" of the two works. *Apple*, 35 F.3d at 1442; *Cavalier*, 297 F.3d at 822; *see also Shaw*, 919 F.2d at 1356 (noting that to pass the intrinsic test, there must be "substantial similarity of general ideas"). The intrinsic test, which is based on the ordinary person's subjective impressions of the compared works as a whole, is typically a question reserved for the jury. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). To prevail, a plaintiff must succeed on both the intrinsic and extrinsic tests.

The Ninth Circuit has noted that "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (specifically approving of the district court's dismissal of a copyright complaint by comparing the two works that were part of the record); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007) (granting motion to dismiss copyright infringement claim); *Cano v. World of Difference Institute*, 1996 WL 371064 at *1 (N.D. Cal. 1996) (granting motion for judgment on pleadings with respect to copyright infringement claim); *Lake v. Columbia Broad. Sys., Inc.*, 140 F. Supp. 707, 708 (S.D. Cal. 1956)

(noting that "upon this motion to dismiss the Court may assume validity of the copyright and, comparing the literary products incorporated into the complaint, determine as a matter of law whether or not the copyright has been infringed," and dismissing complaint).

In the instant case, Gymboree does not, for purposes of the instant motion, challenge the validity of Gorski's copyright or the allegation that Gymboree had access to Gorski's copyrighted work. ECF No. 12. Rather, the only element that Gymboree contends Gorski has inadequately pleaded is the substantial similarity of the parties' works. *Id.* at 7-10. More specifically, Gymboree focuses on the extrinsic test, contending that Gorski "has not pled facts sufficient to allege actionable copying by Defendant because she has not identified any protected elements that were copied." *Id.* at 7. The Court's analysis therefore also focuses on the extrinsic test.

Applying the extrinsic test is a three-step process. First, the Court must confirm that plaintiff has "identif[ied] the source(s) of the alleged similarity between his work and the defendant's work." *Apple*, 35 F.3d at 1443. Second, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." *Apple*, 35 F.3d at 1443; *see also Cavalier*, 297 F.3d at 822 (directing district court to "filter out and disregard the non-protectible elements" when conducting the extrinsic test). Importantly for purposes of this second step, not every element of a copyrighted work is protected by copyright law. *See Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected . . . . [C]opyright protection may extend only to those components of a work that are original to the author."). "Unprotected elements of a copyrighted work can include (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the underlying ideas; (3) standard or stock elements (*scènes à faire*); and (4) facts and other public information." *Erickson*, 839 F. Supp. 2d at 1136. In addition, "[b]rand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959). Third, the Court must determine whether there is "substantial similarity" between the protectable elements of the copyrighted work and the allegedly infringing work. *Shaw*, 919 F.2d at 1356; *see also Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d

7

620, 624 (9th Cir. 2010) (noting that when applying the extrinsic test, the salient inquiry is whether the protectable elements of the respective works are substantially similar); *Cavalier*, 297 F.3d at 822 (noting that the Court must "take care to inquire only whether the protectable elements standing alone are substantially similar").

As to the first step of the extrinsic test analysis, Gorski alleges in her Complaint that in 2014 Gymboree began selling a "Lettuce Turnip the Beet Tee" bearing a screen printed design that was "substantially similar" to Gorski's copyrighted designs. ECF No. 1 at 5. Specifically, Gorski alleges that "the overall arrangement, shapes, typefaces, sizes and placement of the design elements" of Gymboree's tees are substantially similar to Gorski's registered works. *Id.* at 5-6. By making these allegations, Gorski has at least plausibly "identif[ied] the source(s) of the alleged similarity" and has therefore satisfied the first step of the extrinsic test. *See Apple*, 35 F.3d at 1443.

The Court thus turns to the second step: whether any of the allegedly similar features are plausibly protected by copyright. In assessing this second step, the Court considers the Complaint's description of Gorski's designs and Gymboree's tees and the accompanying screenshots of Gorski's "lettuce turnip the beet" designs and a screenshot of Gymboree's "Lettuce Turnip the Beet Tee." Having examined the designs and the descriptions, the Court concludes that the alleged similarities between Gorski's design and Gymboree's product (that is, "the overall arrangement, shapes, typefaces, sizes and placement of the design elements," ECF No. 1 at 5-6) merely amount to arrangements of the short phrase, "lettuce turnip the beet." Short phrases, no matter how distinctively arranged, are not protectable elements. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 n.14 (9th Cir. 2000) ("Short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." (quoting *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959)); *accord Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 710 (7th Cir. 1972) (same); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285 (3d Cir. 2004) (same). Because all of the similarities between the two products that Gorski alleges in her Complaint relate only to an arrangement of a short phrase, the allegedly similar features are not protected by copyright. The Ninth Circuit's extrinsic test for substantial similarity requires the Court to "filter out and disregard the non-protectible elements" and compare only the protectable

8

elements. *Cavalier*, 297 F.3d at 822. Because the Court concludes that Gorski has not alleged any protectable elements, Gorski has not alleged sufficient facts to suggest that Gorski's designs can pass the extrinsic test for substantial similarity. *Id.* Accordingly, the Court GRANTS Gymboree's Motion to Dismiss Gorski's copyright claim.

However, the Court grants Gorski leave to amend her Complaint. Because this is Gorski's first Complaint, the Court does not find repeated failure to cure deficiencies, bad faith, or any undue prejudice to Gymboree. In addition, amendment would not necessarily be futile because Gorski may be able to allege that Gymboree's shirts are substantially similar to other protectable elements in Gorski's copyrighted design.

### B.     Trademark

To state a claim for infringement of a registered trademark under 15 U.S.C. § 1114, a plaintiff must plausibly allege that (1) plaintiff owns a registered trademark; (2) plaintiff's use of that mark began before the defendant's use; (3) the defendant's use is without the plaintiff's consent; and (4) the defendant's use is likely to cause confusion, or to cause mistake, or to deceive. *See* 15 U.S.C. § 1114(a); *Century 21 Real Estate v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1998).

Gorski also asserts a false designation of origin claim under 15 U.S.C. § 1125(a). The elements for this claim are identical to the above four elements of registered trademark infringement under 15 U.S.C. § 1114, except that the plaintiff's trademark need not be registered. *See* 15 U.S.C. § 1125(a). Both claims are subject to the same ultimate test: "whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate*, 846 F.2d at 1178; *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). The "confusion must be probable, not simply a possibility." *Murray v. Cable National Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996). Gymboree does not dispute that Gorski has stated a claim for registered trademark infringement and a claim for false designation of origin. ECF No. 12 at 10.

Rather, Gymboree contends that its use of the phrase "lettuce turnip the beet" on the front of a child's shirt constitutes fair use. The Ninth Circuit has acknowledged that there are two types of fair use in the trademark context: "classic fair use" and "nominative fair use." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  The Court describes both

forms of fair use, which are affirmative defenses, and concludes that Gymboree has not demonstrated that the Complaint compels a finding that either of these affirmative defenses applies as a matter of law.

Classic fair use is a defense to trademark infringement. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). This defense is appropriate where a defendant has used the plaintiff's mark only to describe defendant's own product, and not at all to describe the plaintiff's product. *Id.* at 1150-51. To establish a classic fair use defense, a defendant must prove the following three elements: (1) defendant's use of the term is not as a trademark or service mark; (2) defendant uses the term fairly and in good faith; and (3) defendant uses the term only to describe defendant's own goods or services. *See* 15 U.S.C. § 1115(b). In addition, the Ninth Circuit has held that "the classic fair use defense is not available if there is a likelihood of customer confusion as to the origin of the product." *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 n. 2 (9th Cir. 1990); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984) (holding that the classic fair use defense available only so long as such use does not lead to customer confusion as to the source of the goods or services).[2]

Like classic fair use, nominative fair use is also a defense to trademark infringement. Unlike classic fair use, however, the nominative fair use defense is appropriate where defendant has used the plaintiff's mark "to describe the plaintiff's product" for the purpose of, for example, comparison to the defendant's product and "where the use of a trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one."

---

[2] The Ninth Circuit has stated that:

> A good example of classic fair use is *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460 (9th Cir. 1993). In that case, the plaintiff sold a videocassette recorder, which had two decks in one machine, under the trademark "VCR–2." *See id.* at 1462. The defendant sold receivers and other machines to which two videocassette recorders could be attached and labeled the relevant terminals on the backs of its machines "VCR–1" and "VCR–2." *See id.* Thus, the defendant used the mark "VCR–2" only to describe its own products, to which any second VCR could be attached, and not at all to describe the plaintiff's product or any other particular VCR. Accordingly, the classic fair use analysis was appropriate. We held that "[t]he uses were descriptive, and there is no evidence from which an inference of bad faith could be drawn." *Id.* at 1467.

*Cairns*, 292 F.3d at 1151.

10

Case No.: 14-CV-01314-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1  *New Kids on the Block*, 971 F.2d at 307-08. To establish that the use of a mark constitutes nominative fair use, a defendant must prove the following three elements: (1) the product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.* at 308.[3]

In the instant case, the Complaint does not compel a finding that either of these affirmative defenses applies as a matter of law. To the contrary, Gorski has alleged in the Complaint that Gymboree's use of "lettuce turnip the beet" has appropriated the cachet of Gorski's products and has created consumer confusion. Specifically, Gorski alleged that "Gymboree's marketing, advertising, sale and promoting the sale of its clothing using an infringing mark will create a likelihood that a false and unfair association will be made between the clothing of Gymboree and that of Gorski because the purchasing public is likely to believe that Gymboree's clothing is connected with, produced or sponsored by Gorski." ECF No. 1 at 7. Factual allegations in the Complaint support this conclusion. Specifically, Gorski alleges that Gorski "has already received multiple communications from consumers evidencing the fact that actual confusion has occurred as a result of Gymboree's infringement." *Id.* at 8. Furthermore, Gorski alleges that "[p]urchasers associate the LETTUCE TURNIP THE BEET Mark only with Gorski's clothing goods and online storefront." *Id.*

In light of the allegations in the Complaint, the Court cannot conclude that either affirmative defense applies as a matter of law. First, the Court cannot find as a matter of law that Gymboree's use of the phrase "lettuce turnip the beet" on the front of a child's shirt makes no suggestion of sponsorship or endorsement by Gorski, as the third element of the nominative fair use defense requires. *See Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1012 (N.D. Cal. 2012) (holding that a plaintiff's allegation that "[d]efendant's use of

---

[3] The Ninth Circuit has cited the First Circuit's decision in *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42 (1st Cir. 1991) (Breyer, C.J.), as an example of nominative fair use. In *WCVB-TV*, the First Circuit held that a television station's use of "Boston Marathon" was designed to describe the television station's airing of the event, not that the television station has some approval from the owner of the "Boston Marathon" trademark, the Boston Athletic Association. *Id.* at 46.

11
Case No.: 14-CV-01314-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    [plaintiff's] name is 'likely to cause confusion among the general public about [p]laintiff's

2    endorsement of [d]efendant's product. In particular, consumers are likely to believe that

3    BuckyBalls are authorized, sponsored, approved or otherwise related to [p]laintiff and its licensees,

4    when in fact they are not" was sufficient to overcome a motion to dismiss); *Yeager v. Cingular*

5    *Wireless LLC*, 627 F. Supp. 2d 1170, 1178 (E.D. Cal. 2008) (denying a motion to dismiss because

6    the court could not "find as a matter of law that defendant's reference to plaintiff in the publication

7    [made] no suggestion of sponsorship or endorsement by plaintiff" where plaintiff alleged that

8    defendant's reference to plaintiff in defendant's publication constituted "a false or misleading

9    description of fact or misrepresentation of fact that is likely to cause confusion to consumers, and

10   deceives consumers as to the affiliation, connection and/or association of Plaintiff with

11   Defendants"); *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068,

12   1076 (C.D. Cal. 1998) (denying a motion to dismiss on grounds of nominative fair use where

13   plaintiff alleged that defendants' use of plaintiff's mark "The Crime Channel" in defendants'

14   motion picture about a young boy who watches a cable television station called "The Crime

15   Channel" created "a likelihood of confusion with respect to whether the station refers to plaintiff's

16   product or to a fictional television channel devoted to crime"). Because Gymboree has not

17   demonstrated the third element of the nominative fair use affirmative defense as a matter of law,

18   the Court need not address the other elements of the defense. *Yeager*, 627 F. Supp. 2d at 1178 n.9

19   ("Since the test for nominative fair use is conjunctive, all elements must be met for the defense to

20   apply. Therefore, it is not necessary at this time for the court to discuss the other elements." (citing

21   *New Kids on the Block*, 971 F.2d at 308)).[4] Moreover, the allegations in the Complaint suggest that

22   Gymboree was capitalizing on consumer confusion and the cachet of Gorski's products, which is

23   anathema to classic fair use. *Transgo, Inc*, 911 F.2d at 365 n.2. Rather, the Court concludes that

24   Gymboree's contention that a fair use defense applies is premature and therefore DENIES

25   Gymboree's Motion to Dismiss the trademark claims.

---

[4] Just like the defendant in *Yeager*, Gymboree has, in the instant case, "failed to cite any case where, on a motion to dismiss, a court has dismissed a claim based upon the nominative fair use." *Yeager*, 627 F. Supp. 2d at 1178 n.9.

12
Case No.: 14-CV-01314-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Gymboree's Motion to Dismiss with leave to amend with respect to Gorski's copyright claim. The Court DENIES Gymboree's Motion to Dismiss with respect to Gorski's trademark claims. Should Gorski elect to file an amended complaint, she shall do so within 21 days of the date of this Order. Failure to meet the 21-day deadline to file an amended complaint or cure the deficiencies identified in this Order will result in dismissal with prejudice. Gorski may not add new causes of action or parties without a stipulation or order of the Court under Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: July 16, 2014

_____
LUCY H. KOH
United States District Judge